**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee*,

v.

LUIS RUIZ-LOPEZ,
    *Defendant-Appellant*.

No. 13-10093

D.C. No.
5:11-cr-00749-LHK-1

OPINION

Appeal from the United States District Court
for the Northern District of California
Lucy Koh, District Judge, Presiding

Argued and Submitted
March 12, 2014—San Francisco, California

Filed April 25, 2014

Before: M. Margaret McKeown and Ronald M. Gould,
Circuit Judges, and Gordon J. Quist, Senior District Judge.*

Opinion by Judge Gould

---

* The Honorable Gordon J. Quist, Senior District Judge for the U.S. District Court for the Western District of Michigan, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

The panel affirmed the district court's denial of a motion for judgment of acquittal in a case in which the defendant was convicted of illegal reentry following deportation.

The panel held that the evidence presented was sufficient to prove alienage beyond a reasonable doubt. The panel held that so long as the documents in an A-file, including a Form I-213, have been properly admitted, and the jury has been instructed as to the "beyond a reasonable doubt" standard, such documents may be considered by the jury and, depending on their contents, may constitute sufficient proof of alienage if the jury so concludes. Regarding the defendant's challenge to the reliability of the Form I-213 in this case, the panel held that a rational trier of fact could come to the conclusion that the Form I-213 accurately captured the defendant's interview with a DHS agent.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Karen L. Landau (argued), Oakland, California, for Defendant-Appellant.

Susan B. Gray (argued), Assistant United States Attorney, Melinda Haag, United States Attorney, Barbara J. Valliere, Chief, Appellate Division, Department of Justice, San Francisco, California, for Plaintiff-Appellee.

**OPINION**

GOULD, Circuit Judge:

Luis Ruiz-Lopez, convicted of illegal reentry following deportation under 8 U.S.C. § 1326(a) and (b), seeks a judgment of acquittal. He claims that the government did not present evidence sufficient to prove his alienage beyond a reasonable doubt. Because we conclude that sufficient evidence supported the jury's finding of alienage, we affirm the district court's denial of a judgment of acquittal.

**I**

In December 2002, Ruiz-Lopez was interviewed in the Solano County Jail in Fairfield, California by Department of Homeland Security ("DHS") Agent Axel Sauter. From 1997 to 2002, Agent Sauter was assigned "to interview aliens encountered in the United States to determine their status," and he conducted about 600 interviews a year. Although not fluent in Spanish, Agent Sauter received Spanish lessons as part of his training and did "more than half" of his interviews at the Solano County jail in Spanish. It was his "regular

practice" to terminate the interview if language proved to be a barrier to communication. Agent Sauter conducted each interview the same way according to his "pattern and practice." He would take handwritten notes during the interview, and then type those notes and enter them onto a Record of Deportable/Inadmissible Alien form ("Form I-213") within a day. None of the information entered onto the Form I-213 was taken from state or federal indices or filled in before the interview, although Agent Sauter would look at such indices before an interview to confirm any relevant information.

Ruiz-Lopez was arrested in 2011 in Northern California. During Ruiz-Lopez's jury trial for illegal reentry, Agent Sauter testified that he could not remember Ruiz-Lopez, but Agent Sauter recognized his own signature and name on Ruiz-Lopez's Form I-213. The Form I-213 relating to Ruiz-Lopez was created following Agent Sauter's usual pattern and practice.

Agent Sauter testified that Ruiz-Lopez told him that: (1) he "was born in Zamora, Michoacan, Mexico"; (2) in 1997, Ruiz-Lopez entered the United States near Nogales, Arizona, without inspection after having used the services of a "coyote," or smuggler, for the price of $800; and (3) his father and mother were both born in Mexico, but they were in the United States as lawful permanent residents. Ruiz-Lopez said that he did not fear persecution if he returned to Mexico, that he had no pending application for status in the United States, and that his parents had not applied for any kind of benefit on his behalf.

Agent Courtney Norris of the Immigration and Customs Enforcement ("ICE") testified about the documents in Ruiz-

Lopez's A-file, which is the "official record for an individual" recording "all of that individual's contacts or encounters with Immigration Customs Enforcement, Citizenship and Immigration Services, Custom and Border Protection, and the Legacy INS." Ruiz-Lopez's A-file contained the following documents: (1) the Form I-213; (2) a Notice of Intent to Issue a Final Administrative Removal Order ("Form I-851"); (3) a Final Administrative Removal Order ("Form I-851A"); (4) a Warning to Alien Ordered Removed or Deported, in English and Spanish ("Form I-294"); and (5) a Warrant of Removal/Deportation ("Form I-205").

The Form I-851 was served on Ruiz-Lopez nineteen days before his removal. It notified him that the INS had determined that he was subject to expedited administrative removal based on allegations that he was not a citizen or national of the United States, was a native and citizen of Mexico, had entered the United States near Nogales, Arizona, without inspection, and was not eligible for any statutory relief from deportation. That form also had a section titled "Your Rights and Responsibilities" that told Ruiz-Lopez of his rights, and he acknowledged receipt of that notice by signing it at the top of the second page, using his alias Luis Rodriguez. At the bottom of that page, the box admitting the allegations and waiving his right to contest the charges or petition for review of the Final Removal Order had been pre-checked. Ruiz-Lopez's signature and fingerprint on that Form I-851 were witnessed by a detention officer.

The other forms were also served on Ruiz-Lopez. The Form I-294 was served on Ruiz-Lopez in both English and Spanish, and it told him that he had been found deportable, that he was time barred from reapplying for permission to

enter the United States, and of the legal consequences if he were to reenter illegally. On both the English and Spanish forms, Ruiz-Lopez hand-marked and initialed boxes acknowledging receipt, signed them, and attached fingerprints. Agent Norris admitted that sometimes the boxes detailing that the form had been explained do not get checked, but "the pattern and practice is to explain [the form]."

Ruiz-Lopez's Record of Sworn Statement, taken after his arrest in 2011, was also admitted in evidence with redaction. Agent Norris testified that in the area describing languages spoken by Ruiz-Lopez, the Spanish box had been pre-printed as checked, but the English box was checked by hand and the form specified that an interpreter was not used.

At the close of the government's case, Ruiz-Lopez moved for judgment of acquittal under Federal Rule of Criminal Procedure 29 based on insufficient evidence establishing that he was an alien. The district court denied this motion. After the guilty verdict, the motion was renewed and again denied.

## II

We review *de novo* the district court's denial of a motion for judgment of acquittal based on insufficient evidence. *United States v. Acosta-Sierra*, 690 F.3d 1111, 1117 (9th Cir. 2012). Under *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), we view the evidence in the light most favorable to the prosecution, and then determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010) (en banc). This standard, protecting the key role of the jury in determining guilt or

innocence of crime, cannot be met by a person convicted in jury trial, when the jury heard evidence that would permit it to find guilt beyond a reasonable doubt on all the essential elements of the crime.

Ruiz-Lopez contends that the evidence presented at trial was insufficient for a jury to find his alienage beyond a reasonable doubt. To be convicted of illegal reentry under 8 U.S.C. § 1326, the government must prove that "the defendant was an alien at the time of the defendant's entry into the United States." Ninth Circuit Criminal Jury Instruction 9.8 (2010). "[N]either a deportation order, nor the defendant's own admissions, standing alone," is sufficient to prove alienage. *United States v. Ramirez-Cortez*, 213 F.3d 1149, 1158 (9th Cir. 2000) (internal citations omitted); *see also United States v. Sotelo*, 109 F.3d 1446, 1449 (9th Cir. 1997).

We conclude that the evidence presented was sufficient to find the requisite alienage. Ruiz-Lopez argues that *United States v. Ortiz-Lopez*, 24 F.3d 53 (9th Cir. 1994), is controlling. In that case, we held that a deportation order alone was not sufficient to support a finding of alienage. *Id*. We declined to shift the burden of proof by requiring a defendant to overcome a presumption of alienage created by a deportation order. *Id*. at 56; *see United States v. Noriega-Perez*, 670 F.3d 1033, 1039 n.5 (9th Cir. 2012) (finding that "the circumstantial evidence relied on by the Government 'does not implicate the burden-shifting or standards of proof problems of *Ortiz-Lopez*'" (quoting *United States v. Barajas-Montiel*, 185 F.3d 947, 955 (9th Cir. 1999))). Relying on *Ortiz-Lopez*, Ruiz-Lopez contends that the only evidence of his alienage is the deportation order, which, he asserts, includes the Form I-213 and all of the documentation in the

A-file because those documents relied upon and flowed from the Form I-213. At the same time, Ruiz-Lopez seeks to undermine the credibility of the Form I-213 by suggesting that Agent Sauter's rendering of the interview was flawed because of practices or potential language issues.

We reject these arguments. Although we have consistently barred reliance on a deportation order alone to prove alienage, the Form I-213 and other documentation included in Ruiz-Lopez's A-file are not a "deportation order." The Form I-213 starts the deportation process, but is not an "order." *See United States v. Garcia-Villegas*, 575 F.3d 949, 951 (9th Cir. 2009) (describing information similar to that in the Form I-213, including method of illegal entry, as evidence of alienage); *United States v. Bahena-Cardenas*, 411 F.3d 1067, 1076 (9th Cir. 2005) (referring to "evidence of deportation" rather than all of the evidence leading to that deportation). This view is supported by *United States v. Hernandez*, 105 F.3d 1330, 1333 (9th Cir. 1997), where we concluded that, along with a deportation order, "the fact that Hernandez entered the United States by scaling the border fence rather than via an established border checkpoint is an indication that Hernandez entered the United States illegally as an alien." Information like that presented in *Hernandez* was included in Ruiz-Lopez's Form I-213, which said that he had employed a coyote to smuggle him into the country for the sum of $800. This is more information than the mere fact of Ruiz-Lopez's prior deportation. Ruiz-Lopez gave other information corroborating his likely alienage during the course of the interview, and together this evidence is sufficient to prove alienage. *See United States v. Galindo-Gallegos*, 244 F.3d 728, 732 (9th Cir. 2001) ("A defendant's admissions that he is an alien, together with a deportation order, suffice to establish alienage."); *Ramirez-Cortez*,

213 F.3d at 1158 (finding sufficient the "prior deportation order, admissions Ramirez-Cortez made in his underlying deportation proceeding, and the testimony of an INS agent that his review of . . . [the] records reflected that Ramirez-Cortez was an alien"). Ruiz-Lopez's premise that the Form I-213 is equivalent to the order of deportation is mistaken. So long as the documents in an A-file have been properly admitted in the criminal case, and the jury has been instructed as to the "beyond a reasonable doubt" standard, which is higher than the standard required in a deportation hearing, such documents may be considered by the jury and, depending on their contents, may constitute sufficient proof of alienage if the jury so concludes.

Additionally, under *Jackson*, we must consider evidence in the light most favorable to the prosecution. 443 U.S. at 319. "[A] court of appeals may not usurp the role of the finder of fact by considering how it would have resolved the conflicts, made the inferences, or considered the evidence at trial." *Nevils*, 598 F.3d at 1164. The government presented evidence rebutting language barrier or inaccuracy issues, including Agent Sauter's standard practices and the presentation of Form I-294 in both English and Spanish, as well as Ruiz-Lopez's signatures and fingerprints on several of the forms. Viewed in the light most favorable to the prosecution, this evidence is sufficient to find that Ruiz-Lopez spoke at least some English and that the Form I-213 was accurate. Ruiz-Lopez argues that the facts "undermine the reliability of the Form I-213 in this case." But while the evidence could support a different result, a rational trier of fact could certainly come to the conclusion that the Form I-213 accurately captured Ruiz-Lopez's interview with Agent Sauter.

In this case, the jury could have decided that alienage was, or was not, established beyond a reasonable doubt. Under *Jackson*, the jury verdict must stand where, as here, after receiving proper instructions, the jury concluded that Ruiz-Lopez was guilty on all elements of illegal reentry and the verdict is supported with sufficient evidence. 443 U.S. at 319. For the reasons expressed above, the district court did not err in denying a judgment of acquittal.

**AFFIRMED.**